IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re )<br>)<br>DELILAND FOODS CORPORATION, )<br>)<br>    Debtor. )<br>_____ )<br>FRANK GATTI, PLAN )<br>ADMINISTRATOR, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CEBCO, )<br>)<br>    Defendant. ) | Civil Action No. 04-851-KAJ |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

  Presently before me is an appeal by Frank Gatti ("Gatti"), Plan Administrator for Deliland Foods Corporation ("Debtor" or "Deliland"), from the May 26, 2004 Order of the Bankruptcy Court (Docket Item ["D.I."] 7, App. A; the "Order"). In an oral decision (*id.*, App. B) referenced in the Order, the Bankruptcy Court held that a transfer of money from the debtor to Charles E. Blumer Company ("CEBCO") within 90 days of the debtor filing for bankruptcy protection was in the "ordinary course" of business, and, therefore, was not recoverable under 11 U.S.C. § 547. Pursuant to 28 U.S.C. § 158(a), this court has jurisdiction to hear Gatti's appeal. For the reasons that follow, the Order is affirmed.

## II. BACKGROUND

Deliland filed for bankruptcy protection on April 5, 2001. (D.I. 7, App. C at 13.) Shortly before it filed for bankruptcy protection, Deliland was unable to purchase certain meats from its regular suppliers. (*Id.*, App. D at 2.) On February 19, 2001, CEBCO, a broker, agreed to arrange for meat supplies for Deliland, with payment due within seven days of receipt of the meat. (*Id.* at 2-3.) Prior to February 19, 2001, Deliland had not done business with CEBCO. (*Id.* at 2.) As a food broker, CEBCO does not hold in inventory or ship any of the meat it sells; it merely sets up an agreement between a willing buyer and seller and collects a commission. (*Id.*, App. C at 90, App. D at 2.) The payments at issue center around one check and four wire transfers. (*Id.* at 3.) The check was dated March 9, 2001 and for the sum of $40,275.95, which was delivered within the seven days of receipt of the product but was returned for insufficient funds. (*Id.*, App. C at 46.) As a result of the return of that check for insufficient funds, Deliland transferred an equivalent sum of money in three wire transfers, all within seven days of the returned check and fourteen days of the receipt of the product. (*Id.*, App. D at 2.) The final wire transfer of $18,000 was for payment of received products within seven days.

All of these payments by the debtor were made within ninety days of their filing for bankruptcy protection and, therefore, they are potentially avoidable under Section 547. In a May 26, 2004 teleconference, the Bankruptcy Judge in this case held that the disputed payments were made in the ordinary course of business. (*Id.*, App. B at 5.) Consequently, they could not be avoided under Section 547(c).

## III. STANDARD OF REVIEW

This court has jurisdiction over appeals from the bankruptcy court pursuant to 28 U.S.C. § 158(a). On appeal, a clearly erroneous standard applies to the bankruptcy court's findings of fact and a plenary review standard to its legal conclusions. See *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). When reviewing mixed questions of law and fact, this court will accept the bankruptcy court's finding of "historical or narrative facts unless clearly erroneous, but [will] exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (internal citations omitted).

## IV. DISCUSSION

Section 547 of United States Code Title 11 states that:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property– ...
>     (4) made–
>         (A) on or within 90 days before the date of the filing of the petition ... .
> (c) The trustee may not avoid under this section a transfer–
> ...
>     (2) to the extent that such transfer was--
>         (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>         (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>         (C) made according to ordinary business terms ... .

11 U.S.C. 547(b)-(c).

3

The Third Circuit has held that "[t]he purpose of Section 547(c) is to leave undisturbed normal financial relations between a debtor and its creditors, even as a company approaches bankruptcy. It protects 'recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee.'" *United States Trustee v. First Jersey Sec., Inc. (In re First Jersey Sec., Inc.)*, 180 F.3d 504, 512 (3d Cir. 1999) (quoting 5 Collier on Bankruptcy, 547-47). "The determination of what is in the ordinary course of business' is subjective, calling for the Court to consider whether the transfer was ordinary as between the debtor and the creditor. Factors such as timing, the amount and manner in which a transaction was paid are considered relevant." *Id.* at 512 (internal citation omitted). Moreover, payments are considered to have been made according to "ordinary business terms" unless they are so idiosyncratic as to fall outside the broad range in which similar firms engage. *Id.* at 513.

The Bankruptcy Judge held that the payments in question were not "so unusual or uncommon as to render them an aberration in the relevant industry." (D.I. 7, App. B at 5.) In reaching this determination, the judge noted that "[b]oth parties knew that the debtor entered into the relationship with the defendant while in a distressed financial condition. Although disappointing, it clearly could not have been surprising and no doubt was anticipated that there would be some slippage from the agreed terms" (*Id.*) I agree. A bounced check, followed by a wire transfer shortly thereafter, cannot be considered "so idiosyncratic as to fall outside the broad range in which similar firms engage." *First Jersey Sec.*, 180 F.3d at 513. Consequently, it was not error for the

4

Bankruptcy Judge to determine that the exchange was in the ordinary course of business.

Gatti also argues that as a legal matter "wire transfers issued to replace dishonored checks fall outside of the ordinary course of business." (D.I. 7 at 4-6.) As support for this argument Gatti cites *In re Barefoot*, 952 F.2d 795, 800 (4th Cir. 1991). (D.I. 7 at 4.) That case says that Congress did not "intend a bad check and subsequent payment to make it good to be viewed as in the ordinary course of affairs between two parties or made according to ordinary business terms." 952 F.2d at 800. However, the quoted language refers to a contemporary exchange under Section 547(c)(1), not whether a transaction was in the ordinary course of business as required under Section 547(c)(2). See *id.* (stating that the "the wire transfers, which were within the preference period, and those payments can hardly be seen as contemporaneous").

## V. CONCLUSION

Accordingly, it is hereby ORDERED that the October 28, 2003 Order of the Bankruptcy Court is AFFIRMED.

                                                      _____
                                                     UNITED STATES DISTRICT JUDGE

Dated:   March 31, 2005
Wilmington, Delaware